SNYDER *et al.* v. WAMPTON *et al.*

</div>

1. STATUTE CONSTRUED: SCHOOL TAX. The powers conferred upon the district board of directors by ₰ 2037, may be exercised without the concurrent action of the annual district meeting, when any contingency renders the levy of an additional tax necessary for the support of schools during the term required by law.

<div align="center">

*Appeal from Cedar District Court.*

FRIDAY, DECEMBER 6.

</div>

ON the ninth day of April, 1859, the district board of directors of the Tipton school district, township of Centre, in Cedar county, at a regular meeting of the board, of that date, estimated the per centum of tax necessary to be raised in addition to the teacher's fund in order to support the several schools of said district for the current year, as required by law ; and by resolution directed that the same should be certified to the county judge, which was accordingly done in the following words, viz :

> *To the County Judge*
> > *of Cedar County, Iowa* :

It is hereby certified that at a meeting of the board of directors of the Tipton school District, township of Centre,

county of Cedar, held at Tipton on the 9th day of April, 1859, the following tax of six mills on the dollar for teacher's fund was voted.

EDWIN M. HUBER, Sec'y of School Dist., Town. of Centre : dated at Tipton, this 1st day of July, 1859."

Upon the authority of this certificate the county judge, together with the county treasurer and county surveyor, levied a special tax of six mills on the dollar upon the taxable property of the district; and placed said tax list in the hands of the treasurer and collector of the county, with the proper warrant attached for the collection of the same. Among others the plaintiff's property was charged with this tax, and they applied for and obtained an injunction, restraining the defendants from the collection thereof, upon the alleged ground that the levy of said tax was illegal and made without authority of law. The court below held against the plaintiffs, and dismissing their bill, they appealed.

*Richman & Bro.*, and *Cook & Drury* for the appellants.

I. The power to levy a tax is an incident of sovereignty, and can be exercised only by or under the authority of the sovereign. The right to exercise the power by an authority inferior to the legislature will not be presumed. *Pond* v. *Negus*, 3 Mass. 250 ; *Thurston* v. *Little et al.*, Ib. 429 ; *Caldwell* v. *Eaton*, 5 Ib. 402 ; 17 Ib. 291 ; 22 Ib. 36.

II. By the 3rd clause of § 2028 of the Revision of 1860, the power to levy a tax for the compensation of teachers and for other purposes, is vested solely in the electors of the district; and

III. And no power is vested in the board of directors, even when the electors neglect or refuse, to make such levy.

*Wm. H. Tuthill* and *James Grant* for the appellee, filed a carefully prepared and elaborate argument, presenting propositions which are sufficiently stated in the opinion of the court.

LOWE, C. J.—It is conceded that the resident electors of of the township district in question, at their annual meeting in March, 1859, did not, by a vote taken for that purpose, levy a tax for the teacher's fund; nor did they delegate the power to do so, as they might have done, to the district board of directors. The correctness of the ruling of the court below, depends upon the question, whether in the absence of such vote, or delegation of power, the district board can themselves determine the per centum of tax to be levied for such purpose ; and authorize the levy and collection of the same as other school district taxes are levied and collected.

In the very able and luminous discussion of this question, the counsel for both parties litigant, have done full justice to the subject, in the light of which we will briefly state the conclusions to which we have arrived in our interpretation of the law, out of which the supposed difficulty arises. The act itself, establishing a system of common schools, can not be read attentively without producing the conviction, that, that department of the law making power to whose wisdom this branch of the legislation has been especially intrusted, intended to make the same a very thorough and efficient system of common school education. Hence we find at the very threshhold of the system (in the 2d section of the law) a provision to the effect, that in each sub-district there shall be taught one or more schools for the instruction of youth, at least for the term of twenty-four weeks, or two full quarters in each year. Anticipating that the ordinary teachers fund would be inadequate, (at least for some years to come,) to pay instructors for keeping up a school in each

sub-district for that period of time, they invested the electors of a district when legally assembled, with power to levy or vote a tax, not exceeding one per cent in any one year, to raise a fund to be expended, among other objects, in compensating teachers. This power is found in § 2028 of the Revision of 1860, and may be exercised directly by the electors themselves, or they may delegate the power to the district board of directors. In exercising the power themselves it would be competent for them, within the maximum limit, to increase by their vote, the teachers fund so as to keep up the schools in their district, six, nine or twelve months, according as it should be deemed expedient, and whatever amount of tax should thus be voted, it becomes the duty of their secretary, under § 2044, to certify the per centum thereof, whether for school house purposes or for the compensation of teachers, or for both, to the county judge (now Board of Supervisors,) whose duty it is to make the requisite levy. Unfortunately, however, a duty of this kind, devolving on all the citizen voters of a district, where no special responsibility rests upon any one individual, is too often neglected from sheer inattention, or indifference felt for the successful working of the system; and when in addition to this there is also a failure to delegate the power to the district board, there would necessarily follow in most cases a failure to keep up the schools in the several sub-districts for the twenty-four weeks, being the minimum period in any one year. Such has been the painful experience of those who have watched with the greatest interest the operation of the machinery of the school system, and such was the case in the district where this controversy arose. To obviate, howevr this known infirmity of the system, or rather this constant recurring liability of the district electors, to omit for some cause or other, to supply the means for carrying on regularly and efficiently their common school sys-

tem, the law, in defining the power of the district board upon whom devolves mainly the general conduct and administration of the system, has, in § 2037, made it the duty of the board, " at their regular meeting in April of each year, to estimate the per centum of tax on the taxable property of the district necessary to raise a fund, which, with the teachers fund from the county treasury, as shown by notice from the county judge, shall be sufficient to support the several schools of the district, for at least the time required by this act for the current year; which per centum they shall certify to the county judge, who shall at the time of levying the taxes for county purposes, levy the per centum of tax thus certified upon the property of the district; which shall be collected and paid over as other school district taxes are." The plaintiffs insist that this section does not confer upon the board the power to increase the teacher's fund by taxation when necessary for the purpose therein designated, independent of the action or non-action of the meeting of the district electors, but that the duty enjoined is to be performed in subordination to, or in conjunction with what may be done by the district at its annual meeting; that is to say, if the district meeting shall vote, levy or authorize such tax, then the board may under, said section, estimate what per centum of such tax voted shall be certified to the county judge, &c. We admit there are not reasons wanting to support such an interpretation of this section. Yet we are satisfied both the language of the section and policy of the law indicate a different intention on the part of the law-makers. It will be observed that there is not a word in the whole section which couples the particular duty imposed upon the board, with any proceeding whatever of the meeting of the district electors; it makes no allusion to the action of the district meeting. It does not say that the board shall determine how much of the tax voted by the electors shall be levied in order to keep up the

schools the required period during the year, as in all proba-
bility it would have done, if it was intended that this sec-
tion should have the construction claimed for it.    But they
are " to estimate the per centum of tax on the taxable
property of the district necessary to raise a fund, which,
with the teachers fund from the county treasury, shall be
sufficient to support the several schools, for at least the
time required by the act." It will be seen from this lan-
guage that the power conferred is not only independent, but
contingent, to be exercised only when the necessity con-
templated in the law arises.    For instance, if the teacher's
fund from the county treasury should be sufficient of itself
to support the schools twenty-four weeks, the contingency
will not have happened.    Again if it should not be sufficient
and the annual district meeting (held prior to this time,)
should supply the deficiency by voting and levying the
required tax, the contingency still would not happen, and it
would not be necessary, as we presume the power would not
be exercised by the board in that event.    It is only when it
is necessary to accomplish the object proposed in this sec-
tion that the board is required to exercise the power.    In
this view of the subject we perceive no necessary conflict
between the power and duties of the district meeting and
those of the district board as they are defined in the several
sections above referred to.    This construction harmonizes
not only with the natural import of the language employed,
but in our judgment with the true object and policy of law ;
whilst we have the best reasons for beleiving that it does
with the actual intention of the body that framed the act.
Indeed this ultimate power of taxation by the board for the
object proposed when the necessity arises, is regarded by
the friends of the present school system as the most import-
ant if not its crowning feature, that which imparts to its
operation its chief stability, regularity and efficiency.    We

are, therefore, prepared to approve the action of the court below and to affirm its decision.

Affirmed.